Larry **SPROUSE, et al., Plaintiffs,**

v.

**CITY CREDITS COMPANY, et al., Defendants.**

No. C–3–99–423.

United States District Court, S.D. Ohio, Western Division.

Nov. 2, 2000.

Mary K.C. Soter, Cleveland, OH, for plaintiffs.

Randal S. Knight, for defendants.

## DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. # 11); JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF; TERMINATION ENTRY

RICE, Chief Judge.

The Plaintiffs bring this litigation under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* The facts giving rise to it are not in dispute. On September 24, 1998, Defendant City Credits Company ("CCC") sent a debt collection letter to Plaintiff Shirley Sprouse, seeking to collect debts which she owed to Miami Valley and Good Samaritan Hospitals.[1] On October 15, 1998, Defendant Andrew Engel ("Engel"), an attorney representing Miami Valley Hospital, filed suit on behalf of his client in the Dayton Municipal Court against Shirley Sprouse and her husband, Plaintiff Larry Sprouse, seeking to obtain a judgment in the sum of $4,215.91.[2] The complaint, by which the state court collection action was initiated, was served on the Plaintiffs, along with a summons which informed them that, in accordance with Ohio law, they had 28 days in which to serve an answer. In addition, Engel appended to the complaint

---

**1.** The validation notices required by 15 U.S.C. § 1692g(a) are set forth at the bottom of that letter.

**2.** Plaintiff Larry Sprouse was alleged to be liable for his wife's debt to Miami Valley Hospital, pursuant to Ohio Revised Code § 3103.03, which obligates every married person to support himself or herself and his or her spouse.

a document which contained the validation notices required by 15 U.S.C. § 1692g(a). In that document, Engel also explained that the Plaintiffs' rights under the FDCPA differed from their rights under state law, and he cautioned that, to protect their rights under Ohio law, the Plaintiffs should carefully read and follow the instructions set forth on the summons.[3] The state court collection action ended with the entry of a consent judgment whereby the Plaintiffs admitted that they were liable to Miami Valley Hospital.

In their Complaint (Doc. # 1), the Plaintiffs allege that the foregoing actions violated the FDCPA in two ways. In the First Claim for Relief, Plaintiff Shirley Sprouse alleges that the Defendants violated 15 U.S.C. § 1692f, because she was sued her prior to the expiration of the 30-day period which § 1692g(a) afforded her to dispute the validity of the debt. *See* Doc. # 1 at ¶¶ 5–7. In the Second Claim for Relief, Plaintiff Larry Sprouse alleges that the Defendants violated § 1692f, by filing suit against him prior to notifying him that he owed a debt to Miami Valley Hospital or providing the § 1692g validation notices to him. *Id.* at ¶¶ 9–12.

This case is now before the Court on the Defendants' Motion for Summary Judgment (Doc. # 11). As a means of analysis, the Court will initially set forth the standards which are applicable to all motions for summary judgment, following which it will turn to the parties' arguments in support of and in opposition to the instant such motion.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the materi-

---

**3.** The notice also advised the Plaintiffs to consult with an attorney, if they had any ques- tions concerning their rights and responsibilities.

al facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.

1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.*, 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

The Defendants seek summary judgment on both claims set forth in the Plaintiffs' Complaint (Doc. # 1). It should be noted that the two claims set forth in the Plaintiffs' Complaint are based upon the filing of the state court collection action. Shirley Sprouse contends that her rights the FDCPA were violated, because she was sued prior to the expiration of the 30–day period in which she had to contest validity of her debts. Larry Sprouse contends that his rights under the FDCPA were violated, because he was sued without having been notified that he owed a debt to Miami Valley Hospital or having been provided the validation notices. Given that both of the Plaintiffs' claims are based upon the filing of the state court collection action, CCC argues that it is entitled to summary judgment, because Engel, rather than it, filed that suit, and that, therefore, it did not violate the FDCPA in either of the ways alleged by Plaintiffs in their Complaint. Engel contends he is entitled to summary judgment on the Plaintiffs' First Claim for Relief, since § 1692g does not prohibit the a debt collector from filing suit within the 30–day period contained in that statutory provision. Additionally, Engel asserts that he is entitled to summary judgment on the

Plaintiffs' Second Claim for Relief, because the FDCPA does not require that a debt collector notify a debtor that he owes a debt or provide validation notices prior to filing suit. In response, the Plaintiffs argue that liability can be imposed on CCC for the filing of the collection action in Dayton Municipal Court, since the evidence raises a genuine issue of material fact as to whether that entity made the decision that the state court collection action be filed. Plaintiff Larry Sprouse also contends that he was entitled to be given the validation notices, before suit was filed against him. In addition, the Plaintiffs rely upon a theory which they have not plead in their Complaint, to wit: that the validation notices, contained in the document that Engel appended to the complaint in the state court collection action, were contradicted by the statement in the summons that the Plaintiffs had to serve their answer within 28 days of receiving the complaint and summons.[4] As a means of analysis, the Court will initially address the arguments raised by Engel as to why neither of the claims set forth by the Plaintiffs in their Complaint is viable, following which it will turn to the Plaintiffs' newly asserted contradicting theory.[5] If the Court concludes that one or more or all of the Plaintiffs' theories is viable, it will address the Plaintiffs' contention that CCC can be held liable for the filing of the collection action in Dayton Municipal Court.

■ In their First Claim for Relief, Plaintiffs allege that the Defendants violated the rights of Shirley Sprouse under § 1692f, because the collection action was filed prior to the expiration of the 30–day period in which she had contest the validity of the debt, pursuant to § 1692g. Section 1692f prohibits debt collectors from using an unfair or unconscionable means to collect a debt.[6] For reasons which follow, this Court concludes that filing the collection action before the expiration of 30 days did not constitute an unfair or unconscionable means of collecting a debt. Under § 1692g(a), a debt collector must provide certain notices to a debtor. Section 1692g(a) provides:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt,

4. In their Reply Memorandum (Doc. # 14), the Defendants have addressed the merits of Plaintiffs' newly asserted theory, without arguing that the Plaintiffs waived the right to rely upon it by not including it in the Complaint. Accordingly, the Court deems it appropriate to address the merits of that theory. *See* Fed.R.Civ.P. 15(b) (permitting pleadings to be amended to conform to the evidence when issues are tried by the implied consent of the parties).

5. In their memorandum opposing the Defendants' Motion for Summary Judgment, Plaintiffs raise the issue of whether Larry Sprouse was indebted to Miami Valley Hospital. To the extent that he is arguing that the Defendants violated his rights under the FDCPA, by filing suit against him to collect a debt which he did not owe, the Court rejects that contention. A consent judgment was entered in the state court collection action, whereby both Shirley and Larry Sprouse stipulated that they were liable to Miami Valley Hospital. The Ohio Supreme Court has held that a consent judgment has the same preclusive effect as a judgment entered after litigation on the merits. *Gilbraith v. Hixson*, 32 Ohio St.3d 127, 512 N.E.2d 956 (1987). *Accord*, See *Vulcan, Inc. v. Fordees Corp.*, 658 F.2d 1106 (6th Cir.1981). Therefore, Larry Sprouse may not litigate in this lawsuit the issue of whether he owed a debt to the Hospital.

6. Section 1692f also lists eight examples of what constitute unfair or unconscionable means to collect a debt. None of the listed examples is remotely implicated by the circumstances giving rise to this litigation.

or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

As can be seen, the issue of whether a debt collector violates the FDCPA by filing suit within the 30–day period is not addressed by § 1692g(a); rather, the question of whether a debt collector may engage in collection activity during the 30–day period is discussed in § 1692g(b), which provides:

*If* the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, *the debt collector shall cease collection of the debt,* or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

(Emphasis added). Based upon the language of § 1692g, the Seventh Circuit has concluded that a debt collector is free to file suit within the 30–day period set forth in that statute and that collection activity

must cease only if the debtor disputes the debt. *Bartlett v. Heibl,* 128 F.3d 497, 501 (7th Cir.1997). *See also, Ditty v. Check-Rite. Ltd., Inc.,* 973 F.Supp. 1320, 1328 (D.Utah 1997) (unambiguous language of § 1692g requires a debt collector to stop collection activity, only if the debtor disputes the validity of the debt); *Rabideau v. Management Adjustment Bureau,* 805 F.Supp. 1086, 1094 (W.D.N.Y.1992) (same). This Court finds the result reached by the Seventh Circuit to be persuasive. It comports with the language employed by Congress when it enacted the FDCPA, which only requires the cessation of collection activity, *if* the debtor has challenged the validity of the debt. Herein, there is no evidence or allegation that Shirley Sprouse notified CCC, Engel or anyone else that she disputed some or all of the debts mentioned in the September 24th letter, nor did she request the name and address of her original creditors. Therefore, the requirement, contained in § 1692g(b) that a debt collector cease all collection activity if the debtor has disputed the validity of the debt, was not implicated. Consequently, the Court concludes that FDCPA was not violated, as a result of suit being filed within the 30–day period. Since the Defendants did not violate the provision in the FDCPA which contains the requirements relating to validation notices, by initiating the state court collection action prior to the expiration of the 30–day period set forth in § 1692g(a), that activity did not constitute an unfair or unconscionable means of collecting a debt, in violation of § 1692f. Accordingly, the Court sustains the Defendants' Motion for Summary Judgment (Doc. # 11), as it relates to the Plaintiffs' First Claim for Relief.

■ In their Second Claim for Relief, Plaintiffs allege that the Defendants violated the rights of Larry Sprouse under § 1692f, by filing suit against him prior to providing the § 1692g validation notices to him.[7] Simply stated, no provision con-

---

**7.** Therein, the Plaintiffs also contend that the Defendants violated the FDCPA, by failing to notify Larry Sprouse that he owed a debt to Miami Valley Hospital, prior to filing suit.

That statute does not require that a debt collector provide that type of pre-suit notification to a debtor.

tained in the FDCPA imposes upon a debt collector the obligation of providing such notices to a debtor prior to filing suit. Under § 1692g, the validation notices must be included in either the first communication from the debt collector or within five days of that communication.[8] Since Congress has expressly provided when the validation notices must be furnished, this Court declines to engraft an additional requirement onto that legislative command, by requiring that a debt collector provide such notices before suit is filed. Accordingly, the Court sustains the Defendants' Motion for Summary Judgment (Doc. # 11), as it relates to the Plaintiffs' Second Claim for Relief.

■ In their memorandum opposing Defendants' Motion for Summary Judgment (Doc. # 11), the Plaintiffs rely upon a theory which they have not plead in their Complaint, to wit: that the validation notices which Engel set forth on the document appended to the complaint in the collection action were contradicted by the statement in the summons that the Plaintiffs had to serve their answer within 28 days of receiving the complaint and summons. In *Smith v. Computer Credit, Inc.*, 167 F.3d 1052 (6th Cir.1999), the Sixth Circuit addressed the theory that a debt collector had violated § 1692g(a), because the validation notices were contradicted by other language in his communications to the debtor, holding that such a theory is viable only if the debt collector threatens the debtor's statutory right to dispute the validity of the debt within 30 days. Herein, the summons informed the Plaintiffs that they were required to serve their answer in the state court collection action,

within 28 days.[9] Although the Plaintiffs were, thus, informed that they had two days less in which to serve their answer than the 30 days in which they had to dispute the validity of the debt, complying with those two deadlines did not present the Plaintiffs with inconsistent choices. It was entirely possible to file an answer in the state court action and, then, dispute the validity of the debt within the remaining two days, or, for that matter, at any time within the 30–day period, either before or after the date for filing an answer. The Plaintiffs have not suggested how serving their answer in the state court collection action would have prevented them from challenging the validity of the debt pursuant to § 1692g(a). It bears emphasis that this is not a case in which a debt collector threatened to take an action against a debtor if he did not pay the debt within the 30–day period. Rather, the Plaintiffs were informed by the summons that, under the law of Ohio, they were required to serve their answer within 28 days. In sum, the Court concludes that the Defendants did not threaten the Plaintiffs' statutory right to challenge the validity of the debt and that, therefore, the summons did not contradict the validation notices. Accordingly, the Defendants are entitled to summary judgment on the Plaintiffs' theory that they (the Defendants) violated the FDCPA, because the validation notices were contradicted by the summons which informed them that they were required to serve their answer in the state court collection action within 28 days.

Based upon the foregoing, the Court sustains the Defendants' Motion for Sum-

**8.** Congress defined "communication" broadly to mean "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). A lawsuit initiated to collect debts is certainly included within that definition. Therefore, the summons and complaint served on the Plaintiffs in the state court collection action constituted the initial communication to them from Engel concerning the debt owed to Miami Valley Hospital. The validation notices were set forth on the docu-

ment Engel had appended to the complaint in that litigation.

**9.** As the Defendants point out, the 28 days in which a defendant has to serve his answer to a complaint is established by the Ohio Rules of Civil Procedure. *See* Ohio R.Civ.P. 12(A)(1). Moreover, the Clerk of the Dayton Municipal Court was required to issue the summons which was served upon the Plaintiffs. *See* Ohio R.Civ.P. 4(A).

mary Judgment (Doc. # 11). Judgment is to be entered in favor of the Defendants and against Plaintiffs.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.